Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/04/2025 10:09 AM CST

State of Nebraska, appellee, v.
Joseph P. Kruger, appellant.

___ N.W.3d ___

Filed November 21, 2025.    No. S-24-566.

1. **Rules of Evidence: Appeal and Error.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Effectiveness of Counsel: Appeal and Error.** An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.

4. \_\_\_\_: \_\_\_\_. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

5. \_\_\_\_: \_\_\_\_. Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

6. **Self-Defense.** A determination of whether the victim was the first aggressor is an essential element of a self-defense claim, and that evidence of a victim's aggressive and violent character is relevant to a defendant's claim of self-defense.

7. **Rules of Evidence: Other Acts: Self-Defense.** Under Neb. Rev. Stat. §§ 27-404(1) and 27-405 (Reissue 2016), specific prior acts of the victim's violent or abusive character are relevant and admissible when a claim of self-defense is raised.

8. **Rules of Evidence: Other Acts: Time.** Remoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible. While remoteness in time may weaken the value of prior acts evidence, such remoteness does not, in and of itself, necessarily justify exclusion of that evidence.

9. **Rules of Evidence.** The "relevancy-versus-unfairly-prejudicial-effect-balancing" test seeks to weigh the probative value of the proffered evidence against the nonprobative factors listed in Neb. Rev. Stat. § 27-403 (Reissue 2016).

10. **Evidence.** The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case.

11. **Rules of Evidence: Appeal and Error.** Because the exercise of judicial discretion is implicit in determinations of admissibility under Neb. Rev. Stat. § 27-403 (Reissue 2016), the trial court's decision will not be reversed absent an abuse of discretion.

12. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

13. **Criminal Law: Intent.** Intentional crimes may require a general intent, where the intent relates to the prohibited act, or a specific intent, where the intent relates to the result achieved.

14. **Homicide: Intent.** In Nebraska, murder in the first degree, murder in the second degree, and manslaughter upon a sudden quarrel are specific intent crimes—they require that the defendant acted with the specific intent to kill the victim.

15. ____: ____. To commit unlawful act manslaughter, the death must not be the intended result of the defendant's act.

16. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

17. **Effectiveness of Counsel: Proof: Appeal and Error.** When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient, and that the deficient performance actually prejudiced the defendant's defense.

18. **Effectiveness of Counsel: Proof.** To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

19. ____: ____. To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

20. **Effectiveness of Counsel: Records: Appeal and Error.** On direct appeal, an appellate court only addresses claims of ineffective assistance of counsel that can be conclusively determined from the record.

21. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

22. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice.

23. **Effectiveness of Counsel: Appeal and Error.** On direct appeal in a criminal case, claims of ineffective assistance of counsel must be both specifically assigned and specifically argued in the appellant's brief.

24. ____: ____. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege the conduct that is claimed to constitute deficient performance.

25. **Appeal and Error.** An assignment of error is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks.

26. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

27. **Speedy Trial: Effectiveness of Counsel: Waiver.** Although defense counsel's authority to waive a defendant's statutory right to speedy trial cannot extend to excuse ineffective representation, defense

counsel can effectively waive a defendant's right to speedy trial. The question, as it is with all claims of ineffective assistance of counsel, is whether counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

28. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice pertaining to a waiver concerning the defendant's right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. In both circumstances, the legal issue is whether the defendant's decision was made knowingly and intelligently.

29. **Trial: Witnesses: Testimony.** Witnesses' bias affects the reliability of their testimony at trial.

30. **Trial: Effectiveness of Counsel: Witnesses.** The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel.

31. **Trial: Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Candice C. Wooster and Sydney J. Clark, Senior Certified Law Student, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

BERGEVIN, J.

## I. INTRODUCTION

Joseph P. Kruger appeals from his convictions and sentences after a jury trial for murder in the first degree[1] and use of a

---

[1] Neb. Rev. Stat. § 28-303(1) (Cum. Supp. 2024).

deadly weapon to commit a felony.[2] On appeal, Kruger challenges the district court's exclusion of evidence he sought to adduce related to his assertion that he acted in self-defense and the court's refusal to give his proposed instruction on unintentional manslaughter to the jury, as well as the sufficiency of the evidence supporting both convictions. Kruger also claims that he received ineffective assistance of counsel because his trial counsel's performance was deficient in numerous ways. We affirm.

## II. BACKGROUND

Kruger's convictions stem from a physical altercation with his father at a family gathering in Lincoln, Nebraska, that resulted in Kruger's father's death. We note that the record reflects that Kruger's father was not his biological father—a fact, according to his testimony, that Kruger learned when he was in his late 30s, approximately 2 years before the physical altercation. Because Kruger and other witnesses referred to him as Kruger's father throughout trial, so do we. We briefly summarize the events of that day as shown by the evidence adduced at trial. We include additional background information within the analysis section below that is relevant to particular issues Kruger raises on appeal.

On the date of the altercation, Kruger's family had gathered in his sister's backyard for a celebration of the life of Kruger's maternal uncle, who had been recently diagnosed with terminal cancer. A verbal dispute arose between Kruger and his sister, during which Kruger's father approached Kruger and punched him in the head, striking him near his left brow and temple. By all accounts, Kruger's father's actions were a gross escalation of the verbal dispute, which he was not involved in until he punched Kruger.

Kruger and his father then engaged in a physical altercation. During the altercation, by some accounts, Kruger told his

---

[2] Neb. Rev. Stat. § 28-1205(1)(b) (Reissue 2016).

father to leave him alone, and by other accounts, Kruger stated that he was going to kill his father. The altercation lasted 5 to 10 minutes before they were pulled apart by Kruger's father's longtime friend and Kruger's sister's partner.

Once separated, Kruger's father stood catching his breath, while Kruger went to a picnic table where he had previously been seated and other family members were congregated. By some accounts, Kruger was searching the tabletop for his keys to leave the gathering when his father moved toward him to reinitiate the physical altercation. In response, Kruger grabbed a steak knife off the table, turned, pointed the knife at his father, and told his father to leave him alone. By other accounts, Kruger grabbed the steak knife off the table, turned, and approached his father. None of the witnesses to the altercation could recall seeing what happened next, when the steak knife penetrated Kruger's father's chest.

After he sustained the injury, Kruger's father walked down the driveway to the front of the house and sat on the front stoop. A doorway camera showed that he was shortly followed by members of the family, including Kruger. Kruger's father eventually was unable to sit up, and his torso fell backward to the front stoop. Kruger performed CPR on his father until emergency responders arrived, and they began to provide care to his father.

The first law enforcement officer to arrive was informed en route that he was responding to a reported stabbing. Upon his arrival, the officer asked, "[W]ho did it?" Kruger answered, "'I did.'" Subsequently, law enforcement took Kruger into custody, and Kruger complied with law enforcement's requests thereafter. Emergency responders transported Kruger's father to a hospital, where he was declared dead upon his arrival.

At trial, it was undisputed that Kruger's father was the initial aggressor of the physical altercation, that he had died from a single penetration of the steak knife through his chest and into his heart, and that Kruger was holding the steak knife when his father sustained the injury that caused his death.

The State contended that Kruger committed murder in the first degree, such that Kruger stabbed his father with the intent to purposefully kill him with deliberate and premeditated malice.[3] Kruger raised multiple alternative theories in his defense: that Kruger pointed the steak knife at his father in self-defense, his father walked into the knife, and his father's resulting death was an accident; that Kruger stabbed his father, but without the intent to kill him; that Kruger stabbed his father with the intent to kill him, but in self-defense; and that Kruger stabbed his father with the intent to kill him, but upon a sudden quarrel.

Accordingly, the primary factual issues at trial were (1) whether Kruger stabbed his father or whether his father impaled himself while Kruger was pointing the steak knife at him; (2) whether Kruger's actions with the knife were taken in self-defense[4]; (3) whether Kruger intended to kill his father; and, (4) if so, whether the killing was committed purposefully with deliberate and premeditated malice,[5] upon a sudden quarrel,[6] or neither.[7]

In total, six witnesses who were present at the time of the physical altercation testified at trial. Kruger's sister, her partner, and a longtime friend of Kruger's father testified on behalf of the State. Kruger, his mother, and his maternal aunt testified in Kruger's defense. Kruger also presented an audio recording of a deposition taken from his maternal uncle, who had lost his battle with cancer before trial. We also note that over the first few days of the trial, the State presented testimony from 12 witnesses who either were law enforcement officers or were similarly related to the investigation.

---

[3] See § 28-303(1).

[4] See Neb. Rev. Stat. §§ 28-1409 and 28-1414(2) (Reissue 2016).

[5] See § 28-303(1) (murder in first degree).

[6] See Neb. Rev. Stat. § 28-305(1) (Reissue 2016) (voluntary manslaughter).

[7] See Neb. Rev. Stat. § 28-304(1) (Reissue 2016) (murder in second degree).

However, with minor exceptions, their testimony is not relevant to the resolution of this appeal.

After nearly 11 hours of deliberation, the jury found Kruger guilty on both counts. At a later sentencing, the court imposed a sentence of consecutive terms of life imprisonment for murder in the first degree and 4 to 8 years for use of a deadly weapon to commit a felony. Kruger filed a timely appeal.

## III. ASSIGNMENTS OF ERROR

Kruger assigns, reordered and restated, that the district court erred when it (1) excluded relevant evidence of specific instances of his father's aggressive, violent, and abusive character and (2) abused its discretion by refusing to instruct the jury on unintentional manslaughter. He also assigns that (3) insufficient evidence was submitted to support the jury's verdict of first degree murder.

Finally, Kruger assigns that he received ineffective assistance of counsel when his trial counsel (4) "failed to file a motion to discharge based on a violation of [Kruger's] right to a speedy trial," (5) "failed to have [Kruger] evaluated by a mental health professional in order to aid in his defense," (6) "failed to introduce evidence of [Kruger's] Post Traumatic Stress Disorder diagnosis," (7) "failed to take [Kruger's] insights into consideration when developing a trial strategy," (8) "told [Kruger] that he needed to testify over his objection," (9) "failed to advise [Kruger] of a potential plea deal for a lesser offense," (10) "failed to properly investigate whether the [S]tate's key witness received a plea deal in exchange for her testimony," (11) "failed to cross examine the [S]tate's key witness about whether she received a plea deal in exchange for her testimony," and (12) "allowed two unpredictable witnesses to testify."

## IV. STANDARD OF REVIEW

[1] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the

Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[8] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[9]

Whether jury instructions are correct is a question of law, to which an appellate court must reach an independent, correct conclusion, irrespective of the determination made by the court below.[10]

[2] In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11]

[3-5] An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.[12] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[13] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[14]

---

[8] *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

[9] *Id.*

[10] See, *State v. Dolinar*, 319 Neb. 565, 24 N.W.3d 30 (2025); *State v. Briggs*, 317 Neb. 296, 9 N.W.3d 632 (2024).

[11] *State v. Vazquez, supra* note 8.

[12] *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023). See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] *State v. Esch, supra* note 12.

[14] *State v. Vazquez, supra* note 8.

## V. ANALYSIS

We first address Kruger's challenges to the district court's exclusion of evidence related to his claim that he acted in self-defense and the court's determination not to instruct the jury on unintentional manslaughter. We then review the sufficiency of the evidence supporting his convictions before concluding with an examination of Kruger's claims concerning the effectiveness of his trial counsel.

### 1. Evidence of Prior Acts

Kruger argues that the court erred in excluding evidence he sought to adduce of his father's past abusive acts against him. Before addressing the parties' arguments, we first provide some additional background information relevant to this issue.

### (a) Supplemental Background

Pretrial, Kruger filed a notice of intent "to offer evidence of [Kruger's father's] prior acts of violence and aggression, and his reputation for such, in this case." In response, the State filed a motion in limine to preclude "[a]ny evidence of the character, or evidence of a pertinent trait of the character, of [Kruger's father], unless [Kruger] has first made a showing outside the presence of the jury that such evidence is admissible."

At a hearing on the State's motion, the State argued that specific prior bad acts of Kruger's father's character, which primarily concerned his physical abuse of Kruger as a child and its continuation into Kruger's adulthood, were not relevant to the trial issues. The State contended that such evidence was too remote in time and that Kruger just wanted the jury to feel that Kruger's father "deserved to die instead of concentrating on what was reasonable. [The prior acts] are just things to inflame the emotions of the jury."

Kruger responded that the evidence pertained to his self-defense claim and was relevant for establishing that when the

altercation occurred, Kruger believed his actions were immediately necessary for the purpose of protecting himself from serious bodily injury.[15]

The court sustained the State's motion in limine. In its written order, the court found that the specific acts Kruger sought to introduce were "[too] far removed" to be relevant—with the most recent acts having occurred 8 and 9 years before the altercation—and that even if relevant, they were excluded under Neb. Rev. Stat. § 27-403 (Reissue 2016).

During trial, the issue again came before the court. Outside the presence of the jury, Kruger made an offer of proof by testifying as to specific prior acts of abuse he sustained by his father. In sum, the offer included various acts of abuse, beginning with an incident when Kruger was about 3 years old and continuing with other incidents that occurred well into Kruger's adulthood. The last act of physical abuse had occurred approximately 9 years before the altercation in this case and was the first time that Kruger physically rebuffed his father's abuse. The most recent specific act was a verbal threat of violence that occurred 8 years before the altercation in this case. The offer of proof also included how the abuse caused Kruger to suffer from temporal lobe epilepsy and post-traumatic stress disorder.

In its reconsideration of the evidence of the specific acts in light of the evidence already adduced at trial, the court ruled that the evidence was relevant and generally admissible.[16] However, in consideration of the remoteness of the prior acts, as well as unfair prejudice to the State's case and potential confusion of the jury, the court ruled that only acts committed within 10 years of the altercation were to be admitted. The court's ruling permitted Kruger to adduce evidence about the last act of physical abuse and the verbal threat of violence.

---

[15] See, generally, § 28-1409(1) and (4).

[16] See Neb. Rev. Stat. §§ 27-401 and 27-402 (Reissue 2016).

(b) Resolution

On appeal, Kruger argues that the court's 10-year limitation was erroneous and that by not hearing the entire history of abuse Kruger suffered at the hands of his father, the jury was not able to fully consider his mental state and actions at the time of the altercation, which prejudiced his claim that he acted in self-defense.[17]

[6,7] We have recognized that a determination of whether the victim was the first aggressor is an essential element of a self-defense claim, and that evidence of a victim's aggressive and violent character is relevant to a defendant's claim of self-defense.[18] Accordingly, we have held that under Neb. Rev. Stat. §§ 27-404(1) and 27-405 (Reissue 2016), specific prior acts of the victim's violent or abusive character are relevant and admissible when a claim of self-defense is raised.[19]

[8] Moreover, we have recognized that remoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible.[20] While remoteness in time may weaken the value of prior acts evidence, such remoteness does not, in and of itself, necessarily justify exclusion of that evidence.[21]

To the extent the district court's ruling could be read as imposing a 10-year "remoteness" limitation on the probity of

---

[17] See § 28-1409.

[18] See, e.g., *State v. Matthews*, 289 Neb. 184, 854 N.W.2d 576 (2014); *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000); *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983). See, also, *State v. Lewchuk*, 4 Neb. App. 165, 539 N.W.2d 847 (1995).

[19] See, e.g., *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007); *State v. Sims, supra* note 18.

[20] See *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990).

[21] See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

evidence, we reject such a rule. However, the record shows that the court's ruling limiting the evidence of specific acts Kruger could adduce was not grounded on the relevance of the evidence. The issue is not whether the proffered evidence was relevant, but whether, despite its relevance, the evidence was properly excluded.

[9,10] Section 27-403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[22] The "'relevancy-versus-unfairly-prejudicial-effect-balancing'" test seeks to weigh the probative value of the proffered evidence against the nonprobative factors listed in § 27-403.[23] The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case.[24]

[11] Because the exercise of judicial discretion is implicit in determinations of admissibility under § 27-403, the trial court's decision will not be reversed absent an abuse of discretion.[25] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[26]

In light of the parties' presentations of their cases to the jury and Kruger's offer of proof, we cannot say that the court abused its discretion in limiting Kruger to adducing evidence of only the two most recent prior acts. We recognize that the

---

[22] See, also, *State v. Vazquez, supra* note 8.

[23] *State v. Stubbendieck*, 302 Neb. 702, 710, 924 N.W.2d 711, 719 (2019).

[24] *State v. Boswell*, 316 Neb. 542, 5 N.W.3d 747 (2024).

[25] *Pierce v. Landmark Mgmt. Group*, 293 Neb. 890, 880 N.W.2d 885 (2016).

[26] See *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

history of Kruger's father's abusive actions against Kruger is both substantial and lengthy, and that history likely played a part in Kruger's beliefs and actions on the day of the altercation, such that it had probative value to Kruger's defense. However, when that probative value is weighed against the nonprobative factors of § 27-403, the record does not show that the court abused its discretion by not allowing Kruger to present the entire history to the jury. The court based its decision upon the applicability of the nonprobative factors to the proffered evidence, and its reasons are not untenable or unreasonable. Nor was its action clearly against justice or conscience, reason, and evidence. Kruger was able to present evidence, including by reputation and opinion,[27] that informed the jury of his father's character for violence and Kruger's intimate relationship therewith. We cannot say that, in this case, the exclusion of evidence of other specific acts affected a substantial right of Kruger.[28]

## 2. Manslaughter Instruction

Kruger next assigns that the district court erred in refusing to give his requested instruction to the jury on unintentional manslaughter.

[12] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[29]

[13,14] Intentional crimes may require a general intent, where the intent relates to the prohibited act, or a specific

---

[27] See §§ 27-404(1) and 27-405.

[28] See Neb. Rev. Stat. § 27-103(1) (Reissue 2016) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . .").

[29] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

intent, where the intent relates to the result achieved.[30] In Nebraska, murder in the first degree, murder in the second degree, and manslaughter upon a sudden quarrel are specific intent crimes—they require that the defendant acted with the specific intent to kill the victim.[31] However, manslaughter can also be committed unintentionally, where, as a result of the commission of an unlawful act, a person causes the death of another.[32]

[15] We note that this court has routinely referred to "sudden quarrel" or "unlawful act" manslaughter, "intentional" or "unintentional" manslaughter, and "voluntary" or "involuntary" manslaughter interchangeably and that there is no substantive distinction between them under Nebraska law.[33] Whether referred to as intentional or voluntary, to commit sudden quarrel manslaughter, like murder in both the first and second degrees, the killing needs to be the intended result of the defendant's act.[34] Similarly, whether referred to as unintentional or involuntary, to commit unlawful act manslaughter, the death must not be the intended result of the defendant's act.[35]

In this case, the jury found Kruger guilty of murder in the first degree, which required the jury to determine beyond a reasonable doubt that Kruger intended to kill his father. Therefore, because the commission of unintentional

---

[30] See *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993).

[31] See, e.g., *State v. Scott*, 319 Neb. 153, 21 N.W.3d 490 (2025) (murder in first degree); *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011) (voluntary manslaughter); *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983) (murder in second degree); *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901) (murder in first degree).

[32] See § 28-305.

[33] See, e.g., *State v. Smith, supra* note 31; *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002); *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989).

[34] See *id*.

[35] See *id*.

manslaughter requires the absence of an intent to kill, Kruger could not have been prejudiced by the court's refusal to instruct the jury on unintentional manslaughter. There is no merit to this assignment.

### 3. Sufficiency of Evidence

Kruger assigns that the evidence adduced at trial was insufficient to support both of his convictions. We find no merit to these assignments.

Kruger argues that there is no evidence to support the jury's finding that he acted with deliberate and premeditated malice and that he intended to kill his father. Because the felony that serves as the basis of a use of a weapon charge must be an intentional crime,[36] Kruger relatedly argues that there is insufficient evidence to support his conviction for use of a deadly weapon to commit a felony.

In support of his argument, Kruger first acknowledges that two witnesses testified that during the altercation, they heard him say, "'I'm going to kill you'" to his father.[37] However, Kruger contends that this evidence was insufficient to support his conviction for murder in the first degree because neither witness had informed law enforcement when they were initially interviewed that they heard that statement, and, instead, it was not "until they were interviewed a second time . . . , [8] days after the incident," that they informed law enforcement they heard Kruger make the statement.[38] Kruger asserts that the timing "greatly impacted the credibility of their testimony" and that he denied ever making such a statement.[39]

[16] In making this argument, Kruger overlooks that in reviewing a criminal conviction for a sufficiency of the

---

[36] See, *State v. Pruett, supra* note 33; *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016).

[37] Brief for appellant at 25.

[38] *Id*.

[39] *Id*.

evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[40] The jury heard the two witnesses' testimony and the circumstances surrounding their delayed disclosure. It was for the jury to determine the credibility and weight of the witnesses' testimony.

The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[41] When viewing the witnesses' testimony in the light most favorable to the prosecution, a rational trier of fact could have found that Kruger intended to kill his father and acted with deliberate and premeditated malice. Because sufficient evidence supported the jury's finding that Kruger committed an intentional crime, a rational trier of fact also could have found that Kruger used a deadly weapon to commit a felony. Hence, sufficient evidence was adduced at trial to sustain Kruger's convictions.

### 4. Ineffective Assistance of Counsel

Before addressing Kruger's claims that he received ineffective assistance of trial counsel in multiple respects, we first set forth certain legal principles and procedural requirements that govern such claims on direct appeal.

### (a) Legal Principles

[17] When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient

---

[40] *State v. Brown*, 317 Neb. 273, 9 N.W.3d 871 (2024). See, also, *Clark v. State*, 151 Neb. 348, 37 N.W.2d 601 (1949); *Palmer v. The People*, 4 Neb. 68 (1875).

[41] *State v. Vazquez, supra* note 8.

performance actually prejudiced the defendant's defense.[42] A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[43]

[18,19] To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[44] To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[45] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[46] In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case.[47]

When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics.[48] There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.[49] Ultimately, the

---

[42] *State v. Esch, supra* note 12.

[43] *Id.*

[44] *Id*.

[45] *Id*.

[46] *Id*.

[47] *State v. Vazquez, supra* note 8.

[48] *Id*. See *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994).

[49] *State v. Vazquez, supra* note 8; *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992), *disapproved on other grounds, State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005), *disapproved on other grounds, State v. Falcon*, 319 Neb. 911, 25 N.W.3d 462 (2025).

Constitution guarantees criminal defendants only a fair trial and a competent attorney.[50]

[20] As mentioned above, on direct appeal, an appellate court only addresses claims of ineffective assistance of counsel that can be conclusively determined from the record.[51] The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[52] Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record.[53]

### (b) Procedural Requirements

[21,22] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[54] When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice.[55]

[23] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the

---

[50] *State v. Esch, supra* note 12. See *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

[51] See *State v. Esch, supra* note 12.

[52] *State v. Vazquez, supra* note 8.

[53] See *id.*

[54] *State v. Hagens, ante* p. 65, 26 N.W. 3d 174 (2025); *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

[55] See *State v. Vazquez, supra* note 8.

error to be considered by an appellate court.[56] Claims of ineffective assistance of counsel are no exception.[57] On direct appeal in a criminal case, claims of ineffective assistance of counsel must be both specifically assigned and specifically argued in the appellant's brief.[58]

### (i) Specifically Assigned

[24,25] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege the conduct that is claimed to constitute deficient performance.[59] A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered.[60] As we have recently explained, an assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks.[61]

One need not look further than the opinion of this court in *State v. Mrza*[62] for an example of the requisite level of specificity. There, we synthesized the appellant's argument section into the following assignments that would have been sufficiently specific:

[T]rial counsel was ineffective in failing to investigate the time between the assault and N.W.'s first interview with law enforcement for possible defenses by failing to (1) subpoena cell phone records of N.W. and the friend she

---

[56] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens, supra* note 54; *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014); *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010).

[57] See, *State v. Mrza, supra* note 56; *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014); *State v. Filholm, supra* note 56.

[58] See *id.*

[59] See *State v. Mrza, supra* note 56. Cf. *State v. Filholm, supra* note 56.

[60] *State v. Abdullah, supra* note 57; *State v. Filholm, supra* note 56.

[61] *State v. Hagens, supra* note 54.

[62] *State v. Mrza, supra* note 56.

called following the event, (2) investigate the relationship between N.W. and her friend, (3) subpoena video from the restaurant where N.W. and Mrza met before the event, and (4) subpoena Snapchat to obtain self-destructing messages from Mrza, N.W., and N.W.'s friend.[63]

More recently, we found the following assignments of error sufficiently specific:

> [T]rial counsel was ineffective by failing to properly [(1)] investigate and question the Menards corporate investigator concerning the witness' bias, [(2)] investigate and contact witnesses identified by Brown, and [(3)] request a mistrial after it was revealed that the jury was able to view evidence not related to the case and manipulated evidence while in deliberations.[64]

In reviewing these assignments, each one addresses a specific issue and does not require additional information to understand precisely what the assignment attacks.[65] Similarly, in *State v. Miranda*,[66] we determined that the assignment that trial counsel was ineffective for "'failing to meaningfully participate in voir dire'" was sufficient, whereas the assignment "'failing to zealously advocate'" was insufficient. Another insufficient assignment was that trial counsel was ineffective for "'Failing to Investigate the Case Fully.'"[67] Notably, these two insufficient assignments fail to address a specific issue and require additional information to understand precisely what the assignments attack.

### (ii) Specifically Argued

[26] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance

---

[63] *Id*. at 935-36, 926 N.W.2d at 86.

[64] *State v. Brown, supra* note 40, 317 Neb. at 282-83, 9 N.W.3d at 881.

[65] See *State v. Hagens, supra* note 54.

[66] *State v. Miranda*, 313 Neb. 358, 362, 984 N.W.2d 261, 268 (2023).

[67] *State v. Wood*, 310 Neb. 391, 414, 966 N.W.2d 825, 846 (2021).

with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[68] A claim insufficiently stated is no different than a claim not stated at all.[69] An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[70] Likewise, where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant has failed to include a specific argument sufficient to raise a claim.[71]

For example, when the claim of ineffective assistance on direct appeal involves uncalled witnesses, it is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel.[72] But the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record.[73]

### (c) Kruger's Claims

With the foregoing in mind, we next consider each of Kruger's claims of his trial counsel's conduct that Kruger alleges constitutes deficient performance.

---

[68] *State v. Hagens, supra* note 54.

[69] *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022); *State v. Abdullah, supra* note 57.

[70] *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

[71] See *id.*

[72] See *id.* See, also, *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787; *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019); *State v. Abdullah, supra* note 57.

[73] *State v. Blake, supra* note 70. See *State v. Abdullah, supra* note 57.

### (i) Trial Counsel "failed to file a motion to discharge based on a violation of [Kruger's] right to a speedy trial"

Kruger alleges that his trial counsel's performance was deficient by failing to move for absolute discharge under Neb. Rev. Stat. § 29-1208 (Reissue 2016).

Neb. Rev. Stat. § 29-1207(1) (Reissue 2016) provides that "[e]very person indicted or informed against for any offense shall be brought to trial within six months . . . ," which we have held refers to a period of 6 calendar months, not 180 days.[74] To calculate the time for speedy trial purposes, a court must exclude the day the period commenced, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.[75] The excluded periods are likewise computed by excluding the day of the act, event, or default after which the designated period of time begins to run.[76]

In his argument, Kruger sets forth that the information was filed on July 19, 2023; accordingly, under § 29-1207(1), the State was required to bring him to trial by January 19, 2024, but he was not brought to trial until June 3.

However, Kruger agrees that certain excludable periods under § 29-1207(4)(a) and (b) apply in his case. Subsection (4)(a) provides for the exclusion of "[t]he period of delay resulting from other proceedings concerning the defendant, including, . . . the time from filing until final disposition of pretrial motions of the defendant . . . ." Subsection (4)(b) provides for the exclusion of "[t]he period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel."

Kruger recognizes that his trial counsel filed multiple pretrial discovery motions on July 26, 2023, which were finally

---

[74] See, e.g., *State v. Dolinar, supra* note 10.

[75] *State v. Dolinar, supra* note 10.

[76] *Id.*

disposed of when the court ruled on them on August 8; accordingly, under § 29-1207(4)(a), 13 days were excluded, and the time to bring Kruger to trial was extended to February 1, 2024.

Kruger also recognizes that his trial counsel requested a series of continuances for a pretrial conference that the court granted on September 28, 2023; November 30, 2023; and February 1, 2024. Additionally, Kruger recognizes that his trial counsel filed numerous pretrial motions on January 11, 2024, and that some of them were not finally disposed of until May 30 at the pretrial conference. Kruger acknowledges that applying § 29-1207(4)(a) and (b) to those pretrial motions filed by his trial counsel and those continuances granted at the request of his trial counsel, the time to bring him to trial had not run when trial commenced in his case on June 3.

However, Kruger notes that the record shows that he continually asserted his right to a speedy trial and that his counsel sought and received the continuances over his objection, and he asserts that his counsel failed to properly obtain rulings on the filed pretrial motions. Kruger further notes that the record shows that he never waived his right to a speedy trial and that the court never advised him as to his speedy trial right or the effect of its waiver.

The State argues that the record affirmatively refutes Kruger's claim that his counsel was ineffective for failing to file a motion for absolute discharge because such a motion would have been meritless. The State contends that, as noted by Kruger in his appellate brief, sufficient periods of time were excludable due to Kruger's trial counsel's requested continuances and filed pretrial motions, "regardless of Kruger's consent."[77] In support, the State relies on our interpretation of § 29-1207(4)(b) (Reissue 1995) in *State v. McHenry*.[78]

[27] In that case, on appeal from the denial of a postconviction motion without an evidentiary hearing, we addressed

---

[77] Brief for appellee at 23.

[78] *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

the situation of trial counsel's obtaining a continuance over a defendant's objection. We observed that we had previously recognized that defense counsel's reasonable strategic decisions could effectively waive a defendant's statutory right to speedy trial[79] and that "except for such basic decisions as . . . whether to plead guilty, waive a jury trial, or testify in his or her own behalf, a defendant is bound by the tactical or strategic decisions made by his or her counsel."[80] We concluded that the statutory language of § 29-1207(4)(b) made "clear that the statutory right to a speedy trial is not a personal right that can be waived only by a defendant."[81] Thus, although defense counsel's authority to waive a defendant's statutory right to speedy trial cannot extend to excuse ineffective representation, defense counsel can effectively waive a defendant's right to speedy trial.[82] The question, as it is with all claims of ineffective assistance of counsel, is whether counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[83] *State v. McHenry* stands for the proposition that reasonable strategic decisions by defense counsel do not constitute deficient performance, even when those decisions delay the commencement of trial.[84]

Accordingly, in Kruger's case, the continuances requested by Kruger's trial counsel, as well as the pretrial motions, were valid and effective for purposes of § 29-1207(4)(a) and (b). Thus, the record affirmatively refutes Kruger's claim that his counsel was deficient for failing to file a motion to discharge under § 29-1208 because the time to bring Kruger to trial had not run at any point before he was brought to trial.

---

[79] See *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995).

[80] *State v. McHenry, supra* note 78, 268 Neb. at 231, 682 N.W.2d at 224 (internal quotation marks omitted).

[81] *Id.*

[82] See *State v. McHenry, supra* note 78.

[83] See *id.*

[84] See, also, *State v. Fries*, 224 Neb. 482, 398 N.W.2d 702 (1987).

To the extent Kruger's argument could be read as imply-
ing that his counsel's conduct that led to the requested con-
tinuances and filed motions was deficient,[85] that conduct of
his trial counsel was not assigned, and therefore, we do not
consider it.

*(ii) Trial Counsel "failed to have* [*Kruger*]
*evaluated by a mental health professional*
*in order to aid in his defense"*

Kruger alleges that his trial counsel's performance was
deficient by failing to have him evaluated by a mental health
professional prior to trial because such an expert witness
could have testified concerning how the lifelong abuse by his
father impacted his perception of danger related to his father's
actions. He argues:

> An expert would have explained that, "Abused children
> perceive the behavior of their batterer with a degree
> of knowledge and familiarity not accounted for in the
> rational observation standard of the self-defense model.
> Because of this difference in perception, [these cases] will
> always require expert analysis of the defendant's ability
> to assess and respond to the behavior of [their] batterer."
> See Comment, Moreno, Killing Daddy: Developing a
> Self-Defense Strategy for the Abused Child (1989), 137
> U.Pa.L.Rev. 1281, 1283.[86]

Kruger contends that such testimony would have aided the jury
in its consideration of the evidence in determining whether
Kruger acted in self-defense or upon a sudden quarrel and
would have provided the court with further information as to
the relevancy of his excluded § 27-404 evidence.

The State argues that this claim lacks merit because Kruger
cannot show that he was prejudiced, as a matter of law, by
his counsel's failure to have him evaluated by a mental health

---

[85] See, e.g., *id.*

[86] Brief for appellant at 28.

professional. The State asserts that any testimony by a mental health professional would have been irrelevant because the only issue for the jury at trial was the credibility of Kruger's testimony.

Regardless of the parties' arguments, we do not address this claim because Kruger has failed to specifically assign what conduct of his trial counsel he claims constituted deficient performance. Kruger identifies that counsel failed to have him evaluated; however, he stops short of including the specificity required as to counsel's deficient performance by merely stating "to aid in his defense." Kruger's assignment requires additional information to understand precisely what the assignment attacks.

Because Kruger has failed to specifically assign deficient performance, we do not consider his corresponding argument.

### (iii) Trial Counsel "failed to introduce evidence of [Kruger's] Post Traumatic Stress Disorder diagnosis"

For similar reasons, Kruger relatedly alleges that his trial counsel's performance was deficient by failing to introduce evidence of his post-traumatic stress disorder diagnosis. The State similarly argues that this claim fails because the only issue for the jury at trial was the credibility of Kruger's testimony. We disagree with the State.

Because this assignment addresses a specific issue that does not require additional information to understand precisely what the assignment attacks, it is sufficiently specific. Kruger's assignment identifies the conduct of his counsel that he attacks, the failure to introduce evidence, and, specifically, evidence of his post-traumatic stress disorder diagnosis. His argument then details how that failure did not equal the performance of a lawyer with ordinary skill and training in criminal law.

However, without knowing what such evidence would show, we cannot conclusively determine whether Kruger's trial

counsel's failure was reasonable or whether Kruger was preju-
diced by his counsel's failure to do so.

The record is insufficient to conclusively determine
this claim.

### (iv) Trial Counsel "failed to take [Kruger's] insights into consideration when developing a trial strategy"

Kruger alleges that his trial counsel's performance was
deficient by developing a trial strategy without consideration
of Kruger's thoughts, opinions, and insights, which stemmed
from Kruger's own detailed review of the discovery in his case
and his personal familiarity with his family's dynamics and the
scene of the crime. He argues that

> a reasonable lawyer with ordinary training and skill
> would have taken [his] thoughts, opinions, insights, and
> hard work into consideration and listened to what he
> desired for his trial strategy. This deficiency prejudiced
> [his] defense because had Trial Counsel listened to [his]
> insights about the case, a different and more effective
> trial strategy could have been executed[,] includ[ing] one
> that utilized mental health providers, and this case would
> have resulted in a different verdict.[87]

The State contends that Kruger's assignment of error is
insufficiently assigned because Kruger fails to offer specifics
as to how his contributions would have led to a change in trial
strategy. We agree.

This assignment does not address a specific issue and
requires additional information to understand precisely what
the assignment attacks. The assignment vaguely refers to
"insights," "consideration," "develop[ment]," and "trial strat-
egy." These vague terms are not sufficient to understand pre-
cisely what the assignment attacks. Kruger's assignment fails
to identify the insights that trial counsel failed to consider

---

[87] *Id*. at 38.

and fails to identify what conduct of his trial counsel's performance constituted deficient performance because of that failure. Because the assignment requires such additional information to understand precisely what conduct the assignment attacks, it lacks sufficient specificity.

Because Kruger has failed to specifically assign deficient performance, we do not consider his corresponding argument.

### (v) Trial Counsel "told [Kruger] that he needed to testify over his objection"

Kruger alleges that his trial counsel's performance was deficient by telling Kruger that he needed to testify in his defense at trial, instead of respecting that the decision to testify was Kruger's alone.

The State asserts that this claim fails. It contends that the claim is contradicted by a colloquy in the record between the court and Kruger wherein Kruger indicated that he made the decision to testify "'freely and voluntarily'" and that there had not been any "'promises or threats made to get [him] to do that.'"[88] We agree that Kruger's claim fails, albeit on slightly different reasoning.

We note that the U.S. Supreme Court has recognized that "[e]very criminal defendant is privileged to testify in his [or her] own defense, or to refuse to do so."[89] The privilege against self-incrimination "'is fulfilled only when an accused is guaranteed the right "to remain silent unless he [or she] chooses to speak in the unfettered exercise of his [or her] own will."'"[90] "The choice of whether to testify in one's own defense must therefore be 'unfettered,' since that choice is an

---

[88] Brief for appellee at 25.

[89] *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971).

[90] *Rock v. Arkansas*, 483 U.S. 44, 53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (quoting *Harris v. New York, supra* note 89 (Brennan, J., dissenting; Douglas and Marshall, JJ., join)).

exercise of the constitutional privilege . . . ."[91] "Freedom of choice is not a stranger to the constitutional design of procedural protections for a defendant in a criminal proceeding."[92]

We have likewise recognized that the right to testify is personal to the defendant and that defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.[93] "'This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a *known* right or privilege."'"[94] The competence and soundness of defense counsel's tactical advice is crucial to whether counsel has presented sufficient information to the defendant to permit a meaningful and effective waiver of the right to testify.[95] "Even the intelligent and educated lay[person,] . . . [i]f charged with [a] crime, . . . lacks both the skill and knowledge adequately to prepare his [or her] defense [and] requires the guiding hand of counsel at every step in the proceedings against him [or her]."[96]

[28] Accordingly, we have held that defense counsel's advice pertaining to a waiver concerning the defendant's right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's

---

[91] *Harris v. New York, supra* note 89, 401 U.S. at 230 (Brennan, J., dissenting; Douglas and Marshall, JJ., join).

[92] *Faretta v. California*, 422 U.S. 806, 834 n.45, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[93] See *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

[94] *Id*. at 811, 806 N.W.2d at 421-22 (quoting *U.S. v. Teague*, 953 F.2d 1525 (11th Cir. 1992)).

[95] See *State v. Iromuanya, supra* note 93.

[96] *Powell v. Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932).

tactical advice to waive the right was unreasonable.[97] In both circumstances, the legal issue is whether the defendant's decision was made knowingly and intelligently.[98]

Here, Kruger has alleged specific conduct of his trial counsel that may have failed to protect his interests and interfered with his freedom to decide to testify.[99] However, the record affirmatively refutes his claim because, assuming that his counsel's performance was deficient, it shows that Kruger will not be able to establish prejudice as a matter of law. The record shows the following exchange between the court and Kruger:

> THE COURT: . . . You have the absolute right not to testify. That is a decision that is personal, only you can make it.
>
> [Kruger:] Right.
>
> THE COURT: If you choose to testify again, you're going to be subject to cross-examination and impeachment like any other witness. If you choose not to testify, I'm going to specifically instruct the jury that they cannot hold that against you. They cannot make any inference based upon your decision to do that and I will explain to them that, that's your right and you can exercise that right. In light of that sir, do you understand your right to testify and your right — understand your right not to testify?

---

[97] See *State v. Iromuanya, supra* note 93. Accord *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

[98] See *State v. Journey*, 207 Neb. 717, 301 N.W.2d 82 (1981). See, also, *State v. Dean*, 264 Neb. 42, 645 N.W.2d 528 (2002).

[99] Compare *State v. Hagens, supra* note 54, *ante* at 87, 26 N.W.3d at 193 (ineffective assistance of counsel when counsel "'advised [appellant] not to testify'" sufficiently specific), with *State v. German, supra* note 29, 316 Neb. at 872, 7 N.W.3d at 229 (ineffective assistance of counsel "'in respect to [a]dvice [p]rovided on the [d]ecision to [w]aive the [r]ight to [t]estify [b]y [p]roviding [u]nreasonable [a]dvi[c]e [n]ecessary for a [m]eaningful [d]ecision'" insufficiently specific).

[Kruger:] Yes I do, Your Honor.

THE COURT: And sir, have you decided what you do would like to do for the purposes of this trial in front of the jury?

[Kruger:] I'm going to testify.

THE COURT: And are you making that decision freely and voluntarily?

[Kruger:] Yes.

THE COURT: Any promises or threats made to get you to do that?

[Kruger:] No.

The colloquy above shows that the court informed Kruger that whether to testify in his own defense was his personal decision, that Kruger understood the choice was his personal decision, that Kruger made the free and voluntary choice to testify, and that Kruger raised no objection to testifying. Thus, the record affirmatively refutes this claim because it shows that Kruger's decision to assert his right to testify and waive his right not to be a witness against himself was made knowingly and intelligently. Even assuming that Kruger's counsel told him that he needed to testify and performed deficiently in doing so, Kruger will not be able to establish prejudice as a matter of law because the court informed Kruger that he did not need to testify, and Kruger still chose to do so.

To the extent Kruger's argument implies that his counsel provided him unreasonable advice concerning Kruger's choice to testify, he has not assigned what advice his trial counsel provided or that he claims such advice to have constituted deficient performance. Accordingly, we do not consider that possibility.

### (vi) Trial Counsel "failed to advise [*Kruger*] of a potential plea deal for a lesser offense"

Kruger alleges that his trial counsel's performance was deficient because counsel was aware of a plea offer from the State

but never discussed it with him. Kruger and the State agree that the record is insufficient to determine this claim on direct appeal because the existence and contents of such a plea offer are not within the appellate record. We agree.

The record is insufficient to conclusively determine this claim.

### (vii) Trial Counsel "failed to properly investigate whether the [S]tate's key witness received a plea deal in exchange for her testimony"

Kruger alleges that his trial counsel's performance was deficient by failing to investigate whether the State's key witness received a plea offer in exchange for testifying in Kruger's trial. He argues that the circumstances surrounding his arrest warranted such an investigation and contends that if such an offer had been made or a plea agreement existed, the resulting potential bias should have been before the jury for its consideration.

The State argues that Kruger cannot show he was prejudiced by this conduct as a matter of law because the witness' testimony was cumulative of other testimony. In so doing, the State relies on *State v. Ildefonso*,[100] where we determined that the erroneous admission of hearsay evidence was harmless error and did not require reversal because the hearsay evidence was cumulative and other properly admitted relevant evidence supported the jury's verdict. That case is inapplicable here.

[29] As we have recognized, witnesses' bias affects the reliability of their testimony at trial.[101] The erroneous admission of hearsay evidence that is cumulative of other properly admitted evidence is readily distinguishable from the entire absence of evidence of a witness' potential bias.

Nevertheless, in his argument, Kruger fails to allege how his trial counsel was deficient in failing to "investigate." He

---

[100] *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001).

[101] *State v. Brown, supra* note 40. Cf. Neb. Rev. Stat. § 27-408 (Reissue 2016).

fails to detail how the conduct that his trial counsel either did or did not pursue was unreasonable. His argument fails to allege the details that form the basis of his claim.

Because Kruger has failed to specifically argue this claim, it is insufficiently raised, and we do not consider it.

> (viii) Trial Counsel "failed to cross examine the
> [S]tate's key witness about whether she received
> a plea deal in exchange for her testimony"

Relatedly, Kruger alleges that his trial counsel's performance was deficient by failing to cross-examine the witness concerning such a plea agreement. The State again relies on *State v. Ildefonso*[102] in support of its argument that Kruger cannot show he was prejudiced by his counsel's failure to do so as a matter of law. For the same reasons discussed above, that case is inapplicable here, and we disagree with the State.

Nevertheless, also for the same reasons discussed above, Kruger has failed to sufficiently raise this claim. In his argument, Kruger has not detailed how his trial counsel's conduct amounted to deficient performance. Kruger recognizes that his counsel did not know of such a plea deal because he did not "investigate." But again, he fails to allege the details that form the basis of his claim—how his counsel's conduct constituted deficient performance.

Because Kruger has failed to specifically argue this claim, it is insufficiently raised, and we do not consider it.

> (ix) Trial Counsel "allowed two
> unpredictable witnesses to testify"

Finally, Kruger alleges that his trial counsel's performance was deficient by calling two witnesses to testify in his defense whom he asserts were unpredictable. He argues that counsel "should have realized that [they] were unpredictable witnesses and either prepped them for trial more effectively or not called them to testify at all" because they had difficulty recalling the

---

[102] *State v. Ildefonso, supra* note 100.

circumstances of the incident, and their testimony at times was inconsistent with prior statements they had given.[103]

The State argues that this claim is meritless because the witnesses' testimony was largely consistent with Kruger's own testimony, and their testimony provided strong corroboration of the fact that Kruger's father consistently aggressed against Kruger, that Kruger did not aggress against his father, and, ultimately, that Kruger did not stab his father.

First, to the extent Kruger argues that his trial counsel failed to sufficiently prepare the witnesses for trial, Kruger did not assign that conduct amounted to deficient performance. As this court has continuously held and we set forth above, assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege the conduct that is claimed to constitute deficient performance.[104] We decline to read that portion of Kruger's argument as a separate assignment of error. Accordingly, we do not consider it.

[30,31] As for Kruger's trial counsel's decision to call the witnesses at trial, we generally agree with the State that their testimony was favorable to Kruger's defense. The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel.[105] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.[106]

In this case, the witnesses were present at the time of the altercation, and by testifying, the jury was able to hear from all adult persons who were present. Even though their testimony

---

[103] Brief for appellant at 40.

[104] See, *State v. Mrza, supra* note 56; *State v. Filholm, supra* note 56.

[105] *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017); *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990).

[106] *State v. Alarcon-Chavez, supra* note 105.

consisted of some inconsistencies with their prior statements and differed from Kruger's own testimony in some respects, the State's witnesses had similar inconsistencies and similarly differed from each other's testimony in some respects. Moreover, the witnesses' testimony was favorable to Kruger and his defense, and despite conflicting with Kruger's testimony in some respects, those conflicts still supported other theories of his defense.

For those reasons, the record affirmatively shows that Kruger's trial counsel's performance was not deficient by calling the witnesses.

## VI. CONCLUSION

We have determined that the court did not abuse its discretion in excluding particular evidence under § 27-404, the court's refusal to instruct the jury on unintentional manslaughter is not reversible error, sufficient evidence supports Kruger's convictions, and as far as the appellate record shows, Kruger did not receive ineffective assistance of counsel. Thus, we affirm the judgment of the district court.

Affirmed.

Miller-Lerman, J., concurring.

A step instruction setting forth the elements of first degree murder, second degree murder, and manslaughter was given in this case. The step instruction allowed the jury to find Kruger guilty of first degree murder without considering the elements of the lesser-included offenses of second degree murder and manslaughter and without making a specific finding that the killing was not upon a sudden quarrel.

No assignment of error complains about this aspect of the instruction. I believe the due process implications of the step instruction in a first degree murder case warrant revisiting, as elucidated in the dissent in *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016) (Connolly, J., dissenting; Miller-Lerman, J., joins). See, also, *State v. Kilmer*, 318

Neb. 148, 13 N.W.3d 717 (2024) (Miller-Lerman, J., concurring); *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023) (Miller-Lerman, J., concurring).